## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| **DUCT DOCTOR USA, INC. AND IAQ, INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **MELISSA A. EDWARDS**, <br><br> Defendant. | Case No. |

## COMPLAINT

Plaintiffs Duct Doctor USA, Inc. and IAQ, Inc. (collectively, "DDUSA"), by their attorneys, for their Complaint against defendant Melissa A. Edwards ("Edwards"), allege as follows:

## Nature of the Action

1.     This is an action for trademark infringement under the trademark laws of the United States, for unfair competition, and for breach of contract. Duct Doctor USA, Inc. ("Franchisor") terminated Edwards' franchise agreement to operate a DUCT DOCTOR® air duct cleaning business after Edwards was late paying her monthly royalties 21 months in a row, and after Franchisor found evidence that Edwards had engaged in a competing duct cleaning business (Duct

Rangers) during the term of her DUCT DOCTOR® franchise agreement.  Upon termination of the DUCT DOCTOR® franchise agreement, Edwards was required, among other things, to cease operating the terminated DUCT DOCTOR® air duct cleaning business and to sell Franchisor the trucks containing DDUSA's patented air cleaning apparatus.  Edwards has ignored the termination notice, has breached the post-termination obligations in her franchise agreement, and has continued to wrongfully operate a duct cleaning business using DDUSA's federally registered DUCT DOCTOR® trademark.  DDUSA seeks, among other things, a preliminary and permanent injunction (i) enjoining Edwards' wrongful and unlawful use of the federally registered DUCT DOCTOR® trademark, and (ii) enforcing the post-termination obligations in the franchise agreement entered into between Franchisor and Edwards.  DDUSA also seeks damages for Edwards' infringing and other wrongful conduct, as well as the attorneys' fees and costs DDUSA has incurred and will incur in prosecuting this action, as provided by statute and the parties' written franchise agreement.

## Parties

2.     Plaintiff Duct Doctor USA, Inc. ("Franchisor") is a Georgia corporation with its principal place of business in Norcross, Georgia.  Franchisor is engaged in the business of granting franchises to qualified persons to operate

businesses offering air duct cleaning services using DDUSA's business format, system of operations, and trade names and marks.

3.     Plaintiff IAQ, Inc. ("IAQ") is a Georgia corporation with its principal place of business in Norcross, Georgia.  IAQ owns the trademark registration for the DUCT DOCTOR® trademark (trademark registration No. 5,189,880), and has licensed the DUCT DOCTOR® trademark to Franchisor to use in connection with the DUCT DOCTOR® franchise system.

4.     Defendant Melissa Edwards is a resident and citizen of the State of Tennessee.  Edwards is a former franchisee of Franchisor.

### Jurisdiction and Venue

5.     This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and under the common law.

6.     This Court has original subject-matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338, and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. This Court also has original subject-matter jurisdiction of this action under 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.      Venue and jurisdiction are proper in this Court under (i) 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and (ii) the terms of the parties' franchise agreement, under which Edwards agreed to submit personally to the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## DDUSA's Marks

8.      Franchisor has developed, and is the sole and exclusive owner of, a system (the "DDUSA System") relating to the establishment and operation of businesses providing air duct cleaning services and other related services and products to residential and commercial customers ("DDUSA Businesses").

9.      To identify the source, origin, and sponsorship of DDUSA Businesses and the products and services they offer, and to distinguish these Businesses, products, and services from those established, made, offered, and sold by others, Franchisor has extensively used certain trademarks, service marks, trade names, logos, emblems, and indicia of origin, including, but not limited to, the name and mark DUCT DOCTOR® (the "DDUSA Marks").

4

10. The DUCT DOCTOR® mark is registered on the Principal Register of the United States Patent and Trademark Office under Registration No. 5,189,880. Such registration continues in full force and effect.

11. DDUSA has given notice to the public of the registration of the DDUSA Marks as provided in 15 U.S.C. § 1111.

12. Since 2000, DDUSA has continuously used the DDUSA Marks in interstate commerce in connection with the promotion, operation, and franchising of DDUSA Businesses and the promotion and sale of the products and services DDUSA Businesses offer.

13. Franchisor has the right to use and license the DDUSA Marks and derivations thereof, as well as the distinctive DDUSA System through which franchisees offer products to the public under the DDUSA Marks. Pursuant to franchise agreements entered into by and between Franchisor and its authorized and approved franchisees, Franchisor grants franchises to qualified persons to own and operate DDUSA Businesses using the DDUSA Marks and the DDUSA System, but only in such manner and at such locations as are expressly authorized by Franchisor

14. Franchisor and its franchisees use the DDUSA Marks as the marks and trade identity by which the products and services offered by Franchisor and its

franchisees are distinguished from other duct cleaning businesses and the products and services made and sold by them.

15.    Franchisor and its authorized franchisees have advertised and promoted DDUSA Businesses and the products and services they offer under the DDUSA Marks throughout certain portions of the United States.

## The Parties' Written DDUSA Franchise Agreement

16.    On or about November 1, 2013, Edwards entered into a written franchise license agreement with Franchisor (the "Franchise Agreement"), pursuant to which Franchisor granted Edwards the right to operate a DDUSA Business within the Knoxville, Tennessee metropolitan area (the "Business") and to use the DDUSA System and the DDUSA Marks in connection therewith, all as fully set forth in the Franchise Agreement.  A true and correct copy of the Franchise Agreement is attached to this Complaint as Exhibit A.

17.    Contemporaneous with the execution of the Franchise Agreement, Edwards executed a written Guaranty, under which she personally guaranteed the performance under the Franchise Agreement and agreed to be personally bound by each and every provision in the Franchise Agreement.  A copy of the Guaranty is included as Addendum C to the Franchise Agreement.

18.     Edwards agreed in the Franchise Agreement to pay royalty fees to Franchisor on a monthly basis based on the revenues of the Business.

19.     Edwards agreed in the Franchise Agreement to submit monthly royalty reports.

20.     Edwards agreed in the Franchise Agreement not to engage in the business of providing air duct cleaning or related services in the United States during the term of the Franchise Agreement, except as a DUCT DOCTOR®.

21.     It is an event of default, and grounds for immediate termination of the Franchise Agreement, if Edwards failed to pay royalty fees when due and failed to cure that default within seven days of notice of the default.

22.     It is also an event of default, and grounds for immediate termination of the Franchise Agreement, if Edwards committed two or more breaches or violations of the Franchise Agreement within a 12-month period, regardless of whether the breaches are cured.

23.     It is also an event of default, and grounds for immediate termination of the Franchise Agreement, if Edwards engaged in the sale or delivery of air duct cleaning, or offered other similar products or services, under any trade or business name other than DUCT DOCTOR®, during the term of the Franchise Agreement.

EAST\162702475.1

24.    Edwards agreed that, upon termination of the Franchise Agreement, she would, among other things:

a.    Promptly pay to Franchisor, its subsidiaries and its affiliates, all sums of money, royalties, fees or other charges due or which are undisputed and have accrued to the date of termination;

b.    Cease to use, in any manner whatsoever, Franchisor's name, the proprietary marks (including, but not limited to, DUCT DOCTOR®), manuals, slogans, signs, forms, devices, and other materials used in connection with the operation of the franchise, and take all steps to disassociate herself from Franchisor, including removal of signs, internet postings, and non-use of letterheads;

c.    Refrain from representing or advertising that Franchisor and Edwards were formerly affiliated with the Franchise System;

d.    Immediately return to Franchisor all operations manuals, forms, labeled inventory, signs, prospect and customer lists, devices and other materials provided to Edwards by Franchisor, its subsidiaries, or its affiliates;

e.    Take whatever action is necessary to cancel, terminate, and/or change any assumed name registration, document, or other record which

contains the name "DUCT DOCTOR USA®" (or any form or part thereof) or any Proprietary Mark of DDUSA (including, but not limited to DUCT DOCTOR®);

f.     Refrain from disclosing any trade secrets or confidential information of Franchisor, its subsidiaries and affiliates;

g.     Immediately cease operation of the terminated or expired franchised business;

h.     Notify the local telephone company of the termination of the Franchise Agreement and request that the main telephone number that had been used to identify the Franchisee as a licensee of Franchisor ((865) 938-7776) be assigned to Franchisor 7 days after the date of termination;

i.     Promptly notify all customers of the termination of the Franchise agreement and turn over all customer file data including names, addresses, telephone numbers and lists of HVAC affiliations with contact names, telephone numbers, fax numbers and any revenue sharing related arrangements with those affiliations;

j.     Cooperate fully with Franchisor and take whatever steps are necessary to ensure the protection of DDUSA proprietary rights to the patented Air Duct Cleaning Apparatus or body and vacuum equipment

systems; and offer to sell said trucks, proprietary body and Air Duct Cleaning Apparatus to Franchisor for their then fair market value (as such fair market value is determined by Franchisor);

k.    Comply with all other obligations of the Franchise Agreement which are intended to survive termination and expiration of the Franchise Agreement and Franchise including but not limited to the non-disclosure, non-competition, and indemnification covenants; and

l.    Refrain, for a period of two years following termination, from engaging in the business of providing air duct cleaning or related services within a fifty mile radius of Knoxville, Tennessee.

25.    Edwards agreed in the Franchise Agreement that if Edwards failed or refused to comply with her post-termination obligations, then Edwards would pay Franchisor for all costs and expenses, including auditors' and attorneys fees incurred by Franchisor in an effort to effect compliance.  Edwards also agreed that in the event of any default of the Franchise Agreement, the party in default shall pay to the aggrieved party all amounts due and all damages, costs, and expenses, including reasonable attorneys' fees and auditors' fees incurred by the aggrieved party as a result of any such default.

**Edwards' Breaches And Franchisor's Termination
Of The Franchise Agreement**

26.    In 2017 and 2018, Edwards repeatedly failed to pay royalties to Franchisor on a timely basis and repeatedly failed to submit monthly reports on a timely basis, resulting in multiple default notices from Franchisor.

27.    In addition, Edwards breached other contractual obligations, like failing to provide a certificate of insurance.

28.    By September 14, 2018, Edwards had made payments late 20 months in a row.

29.    By September 14, 2018, Edwards had submitted her monthly reports late at least 15 of the previous 20 months.

30.    Consequently, Franchisor's lawyer sent an email to Edwards' lawyer on September 14, 2018, stating, "Your client's payments have been late 20 of the last 20 months, and her reports have been submitted late at least 15 of the last 20 month.  Your client's chronic failure to timely make monthly payments and submit monthly reports is unacceptable.  In the future, [Franchisor] will not give her grace periods or cure periods to timely submit her monthly payments and reports.  Instead, [Franchisor] will strictly enforce the monthly deadlines and Section 9.A.13."

31.    Despite this unequivocal warning, Edwards breached her obligations the very next month by once again paying her royalties late.  In addition,

Franchisor obtained evidence that Edwards had engaged in the sale or delivery of air duct cleaning, or offered similar products or services, under the Duct Rangers name during the term of the Franchise Agreement.

32.    As a result, on October 30, 2018, Franchisor sent Edwards a Notice of Termination of Franchise License Agreement.  A true and correct copy of this Notice of Termination is attached to this Complaint as Exhibit B.

33.    The termination notice reminded Edwards that she was required to comply with the post-termination obligations set forth in the Franchise Agreement, including the obligations listed in Paragraph 24 above.

## Edwards' Breaches Of Her Post-Termination Obligations

34.    Edwards has breached her post-termination obligations under the Franchise Agreement.  Among other things,

a.    She has not paid Franchisor all sums of money, royalties, fees or other charges due or which are undisputed and have accrued to the date of termination;

b.    She has continued to use Franchisor's name, the proprietary marks (including, but not limited to, DUCT DOCTOR®), manuals, slogans, signs, forms, devices, and other materials used in connection with the operation of the franchise, and she has not taken all steps to disassociate

12

herself from Franchisor, including removal of signs, internet postings, and non-use of letterheads;

      c.    She has not returned to Franchisor all operations manuals, forms, labeled inventory, signs, prospect and customer lists, devices and other materials provided to Edwards by Franchisor, its subsidiaries, or its affiliates;

      d.    Upon information and belief, she has not taken whatever action is necessary to cancel, terminate, and/or change any assumed name registration, document, or other record which contains the name "DUCT DOCTOR USA®" (or any form or part thereof) or any Proprietary Mark of DDUSA (including, but not limited to DUCT DOCTOR®);

      e.    She has continued to operate the terminated or expired franchised business;

      f.    Upon information and belief, she has not notified the local telephone company of the termination of the Franchise Agreement and has not requested that the main telephone number that has been used to identify the Franchisee as a licensee of Franchisor ((865) 938-7776) be assigned to Franchisor 7 days after the date of termination;

g.    Upon information and belief, she has not promptly notified all customers of the termination of the Franchise Agreement;

h.    She has not turned over all customer file data including names, addresses, telephone numbers and lists of HVAC affiliations with contact names, telephone numbers, fax numbers and any revenue sharing related arrangements with those affiliations;

i.    She has not offered to sell Franchisor her trucks, and proprietary body and Air Duct Cleaning Apparatus, for their then fair market value (as such fair market value is determined by Franchisor), nor cooperated fully with Franchisor, nor taken whatever steps are necessary, to ensure the protection of DDUSA's proprietary rights to its patented Air Duct Cleaning Apparatus or body and vacuum equipment systems;

j.    She has not complied with all other obligations of the Franchise Agreement which are intended to survive termination and expiration of the Franchise Agreement and Franchise including but not limited to the non-disclosure, non-competition, and indemnification covenants;  and

k.    She has not refrained, for a period of two years following termination, from engaging in the business of providing air duct cleaning or related services within a fifty mile radius of Knoxville, Tennessee.

14

35.   DDUSA has at all times complied with and fully performed all of its obligations under the Franchise Agreement.

### Edwards' Infringement of the DDUSA Marks

36.   Notwithstanding the termination of the Franchise Agreement, Edwards continues to use the DDUSA Marks and the DDUSA System in connection with the operation of her duct cleaning business, to market and promote her duct cleaning business through the use of the DDUSA Marks, to hold her duct cleaning business out to the public as an authorized DDUSA Business, and to pass off her duct cleaning business and the unapproved services offered by her duct cleaning business as being authorized by DDUSA when they are not.

37.   Edwards' use of the DDUSA Marks is without the license or consent of DDUSA and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation and sponsorship.

38.   In addition to the fact that both DDUSA and Edwards offer many of the same services, the services provided by Edwards using the DDUSA Marks are offered to the same class of consumers as those who patronize authorized DDUSA Businesses.   Upon seeing the familiar DDUSA Marks through Edwards' unauthorized use thereof, consumers will be deceived into concluding that Edwards' duct cleaning business, and the products and services offered and sold in

connection therewith, are subject to DDUSA supervision, are sponsored or endorsed by DDUSA, and bear the DDUSA Marks pursuant to DDUSA's authority and permission.

39.     So long as Edwards continues to use the DDUSA Marks in connection with the operation of her duct cleaning business, consumers have no practical way of knowing that Edwards' duct cleaning business is no longer affiliated with, or sponsored, authorized, or endorsed by, DDUSA.  As a result, any consumer dissatisfaction with Edwards' duct cleaning business, or with the products and services offered in connection therewith, will be attributed to DDUSA and the DUCT DOCTOR® franchise network.

40.     Edwards has received actual notice of her violation and infringement of the DDUSA Marks and has constructive notice of DDUSA's rights in the Marks and the registrations thereof pursuant to 15 U.S.C. § 1072.  Edwards' continued infringement is willful, malicious, fraudulent, and deliberate.

## COUNT I

## LANHAM ACT - TRADEMARK INFRINGEMENT

41.     DDUSA repeats and realleges paragraphs 1 through 40 of its Complaint as and for this paragraph 41, as if fully set forth herein.

42.   Edwards' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the DDUSA Marks, and Edwards' sale, offering for sale, distribution, or advertising of goods and services under the DDUSA Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

43.   As a direct and proximate result of Edwards' willful infringement, DDUSA has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

44.   DDUSA has no adequate remedy at law because the DDUSA Marks are unique and represent to the public DDUSA's identity, reputation, and goodwill, such that damages alone cannot fully compensate DDUSA for Edwards' misconduct.

45.   Unless enjoined by the Court, Edwards will continue to use and infringe the DDUSA Marks, to DDUSA's irreparable injury.  This threat of future injury to DDUSA's business identity, goodwill, and reputation requires injunctive relief to prevent Edwards' continued use of the DDUSA Marks and to ameliorate and mitigate DDUSA's injury.

## COUNT II

## <u>LANHAM ACT - UNFAIR COMPETITION</u>

46.     DDUSA repeats and realleges paragraphs 1 through 45 of its Complaint as and for this paragraph 46, as if fully set forth herein.

47.     Edwards' acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services, and commercial activities, all in violation of 15 U.S.C § 1125(a).

48.     As a direct and proximate result of Edwards' willful unfair competition, DDUSA has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

49.     DDUSA has no adequate remedy at law because the DDUSA Marks are unique and represent to the public DDUSA's identity, reputation, and goodwill, such that damages alone cannot fully compensate DDUSA for Edwards' misconduct.

50.    Unless enjoined by the Court, Edwards will continue to compete unfairly with DDUSA, to DDUSA's irreparable injury.  This threat of future injury to DDUSA's business identity, goodwill, and reputation requires injunctive relief to prevent Edwards' continued unfair competition and to ameliorate and mitigate DDUSA's injury.

**COUNT III**

**<u>BREACH OF CONTRACT – POST-TERMINATION OBLIGATIONS</u>**

51.    DDUSA repeats and realleges paragraphs 1 through 50 of its Complaint as and for this paragraph 51, as if fully set forth herein.

52.    Edwards has failed and refused to perform her post-termination obligations under the Franchise Agreement.

53.    Unless ordered by the Court to perform her post-termination obligations under the Franchise Agreement, Edwards will continue to breach her post-termination obligations.

54.    Unless Edwards is ordered to perform her post-termination obligations under the Franchise Agreement, DDUSA is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill, for which DDUSA has no adequate remedy at law.

19

55.    This threat of future injury to DDUSA's business identity, goodwill, and reputation requires that Edwards be ordered to perform her post-termination obligations under the Franchise Agreement to prevent Edwards' continued breaches and to ameliorate and mitigate DDUSA's injury.

## COUNT IV

## BREACH OF FRANCHISE AGREEMENT – DAMAGES

56.    DDUSA repeats and realleges ¶¶ 1 through 55 of its Complaint as and for this ¶ 56, as if fully set forth herein.

57.    The Franchise Agreement had a ten year term.

58.    Under the Franchise Agreement, Edwards agreed to timely pay a monthly royalty based on the revenues of the Business.  Edwards also agreed in the Franchise Agreement not to engage in the business of providing air duct cleaning or related services in the United States during the term of the Franchise Agreement, except as a DUCT DOCTOR®.

59.    Edwards materially breached the Franchise Agreement by repeatedly failing to timely pay monthly royalties and by engaging in a Duct Ranger business, resulting in the termination of the Franchise Agreement.

60.    As a direct and proximate result of Edwards' breaches of the Franchise Agreement, Franchisor has suffered damages, including the loss of the

royalty fees Franchisor would have earned for the remainder of the term of the Franchise Agreement but for Edwards' breaches of the Franchise Agreement.

61.     Franchisor has fully performed its obligations under the Franchise Agreement.

## **PRAYER FOR RELIEF**

**WHEREFORE,** DDUSA respectfully prays for the following relief against Edwards:

A.     A preliminary and permanent injunction enjoining Edwards, her agents, servants, and employees, and those people in active concert or participation with them, from:

1.     Using the DDUSA Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the DDUSA Marks;

2.     Otherwise infringing the DDUSA Marks or using any similar designation, alone or in combination with any other components;

3.     Passing off any of their products or services as those of DDUSA or Franchisor's authorized franchisees;

4.     Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

5.     Causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with DDUSA and Franchisor's franchisees or any of DDUSA's products or services; and

6.     Unfairly competing with DDUSA or Franchisor's franchisees in any manner;

B.     An Order directing Edwards immediately to perform her post-termination obligations under the Franchise Agreement, including, without limitation, her obligations to:

1.     Promptly pay to Franchisor, its subsidiaries and its affiliates, all sums of money, royalties, fees or other charges due or which are undisputed and have accrued to the date of termination;

2.     Cease to use, in any manner whatsoever, Franchisor's name, the proprietary marks (including, but not limited to DUCT DOCTOR®), manuals, slogans, signs, forms, devices, and other materials used in connection with the operation of the franchise, and take all steps to disassociate herself from Franchisor, including removal of signs, internet postings, and non-use of letterheads;

3.     Refrain from representing or advertising that Franchisor and Edwards were formerly affiliated with the Franchise System;

4.     Immediately return to Franchisor all operations manuals, forms, labeled inventory, signs, prospect and customer lists, devices and other materials provided to Edwards by Franchisor, its subsidiaries, or its affiliates;

5.     Take whatever action is necessary to cancel, terminate, and/or change any assumed name registration, document, or other record which contains the name "DUCT DOCTOR USA®" (or any form or part thereof) or any Proprietary Mark of DDUSA (including, but not limited to DUCT DOCTOR®);

6.     Refrain from disclosing any trade secrets or confidential information of Franchisor, its subsidiaries and affiliates;

7.     Immediately cease operation of the terminated or expired franchised business;

8.     Notify the local telephone company of the termination of the Franchise Agreement and request that the main telephone number that has been used to identify the Franchisee as a licensee of Franchisor ((865) 938-7776) be assigned to

Franchisor;

9.    Promptly notify all customers of the termination of the Franchise Agreement and turn over all customer file data including names, addresses, telephone numbers and lists of HVAC affiliations with contact names, telephone numbers, fax numbers and any revenue sharing related arrangements with those affiliations;

10.   Cooperate fully with Franchisor and take whatever steps are necessary to ensure the protection of DDUSA's proprietary rights to the patented Air Duct Cleaning Apparatus or body and vacuum equipment systems; and sell said trucks, proprietary body and Air Duct Cleaning Apparatus to Franchisor for their then fair market value (as such fair market value is determined by Franchisor); and

11.   Comply with all other obligations of the Franchise Agreement which are intended to survive termination and expiration of the Franchise Agreement and Franchise including but not limited to the non-disclosure, non-competition, and indemnification covenants.

C.     An Order preliminarily and permanently enjoining Edwards, for a period of two years (beginning on the effective date of the termination of the Franchise Agreement or the date on which Edwards begins to comply with the non-compete covenants, whichever is later) from engaging, directly or indirectly, (whether as an owner, stockholder, partner, officer, director, or managerial employee) in the business of providing air duct cleaning or related services, or in a business similar to that licensed under the Franchise Agreement, within a fifty mile radius of Knoxville, Tennessee;

D.     That Edwards be required to file with the Court and to serve upon DDUSA's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which Edwards has complied with such injunction or order;

E.     That Edwards account and pay over to DDUSA all gains, profits, and advantages derived by Edwards as a result of her infringement of the DDUSA Marks, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

F.     That Edwards pay to DDUSA such damages as DDUSA has sustained by reason of said trademark infringement, breach of contract, and unfair

competition; and that, because of the willful nature of said infringement, the Court enter judgment for DDUSA for three times the amount of damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

G.     An award of the costs and expenses, including reasonable attorneys' fees, incurred by DDUSA in connection with this action as provided for by statute and the parties' Franchise Agreement; and

H.     Such other and further relief as the Court deems just and proper.

Dated:  November 29, 2018

**DUCT DOCTOR USA, INC. and IAQ, INC.**

By: /s/ Delia Frazier
      Delia Frazier
      Georgia Bar No. 940667
      DLA Piper LLP (US)
      1201 West Peachtree Street, Suite 2800
      Atlanta, Georgia 30309
      (404) 736-7800
      (404) 682-7800 (facsimile)
      Delia.frazier@dlapiper.com